# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SETH BAUGHMAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 15-1143 (lead case) |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| KILLION & SONS WELL SERVICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant's Motion (Doc. 67) for summary judgment will be denied.

The Court writes only for the benefit of the parties and their counsel. Both the collective and individual (consolidated) Plaintiffs have put forth evidence and arguments indicating that, from January 2013 until August or September 2015, Defendant manipulated its pay-practices to ensure that workers received the same compensation as they did under their former "day-rate," a compensation-policy found impermissible by the DOL. Plaintiffs' evidence, both in the "macro" and the "micro" (particularly as revealed in the individual Plaintiffs' briefing) creates a reasonable, if not strong, inference that Defendant was hostile to the DOL's determination. *See* Pls.' Opp'n Brs. (Docs. 76 & 79) (citing record evidence). Such hostility appears to be echoed in the (arguably) passive-aggressive statements in the company's written announcement of purported changes. *See* Def.'s Br. (Doc. 69) at 4 ("In the first couple of years of business we paid our employees on a Day-Rate system. To us, this seemed a very fair way of payment because a man could make the same pay on his first day on the job as his last.

Unfortunately for us this is strictly forbidden through the [DOL] rules. We were ordered to pay a huge amount of money to past and present employees.") (quoting record evidence).

Counsel's likely protestations notwithstanding, Plaintiffs' evidence appears problematic to Defendant's positions in many respects. To the extent that changes in pay-policies resulted in workers, under materially-similar circumstances, making the same net-compensation both before and after abandonment of the day-rate, this result appears inconsistent with the DOL's conclusion that workers were being underpaid in the old system.

Defendant maintains that it remained free to negotiate wage-rates with its employees, so long as the rates were not artificially-lowered to avoid overtime obligations; and counsel presents hypothetical scenarios suggesting that Plaintiffs have miscalculated their effective hourly wage-rates under the old system. *See* Def.'s Reply Br. (Doc. 82) at 4-5. Nevertheless, Defendant has made no effort to show whether workers' wage-rates remained consistent before and after the "termination" of the day-rate policy. Instead, Defendant offers broad references to basing workers' wage-rates on their experience-level and employee-negotiations. At the very least, however, Plaintiffs have demonstrated disputed, material facts regarding whether their wage-rates were manipulated to bring their net compensation in-line with the old system. *See, e.g.*, Individ. Pls.' Opp'n Br. (Doc. 79) (citing examples of how workers' net-pay, before and after the purported discontinuation of the day-rate, ended up being only pennies' different). Crediting Defendant's blanket-assertions would require a fact-finder to accept some remarkable coincidences, indeed.[1]

---

[1] Workers whose employment pre-dated the changes in compensation-policy surely had *at least* the same levels of skill and experience before and after. Should any such worker be able to demonstrate that his effective wage-rate significantly diminished under the new policies, this easily could support the conclusion that Defendant artificially-lowered his rate under the new system (thereby potentially-avoiding overtime liability). Not-lost on the Court is the distinct

At the risk of oversimplification, Defendant's elimination of the day-rate system, all other factors being equal, should have been expected to result in employees who worked overtime enjoying an increase in compensation. Defendant certainly has not shown this to be the case; and Plaintiffs' evidence is to the contrary.

In the end, the Court has little doubt that Defendant has failed to demonstrate entitlement to summary judgment on liability. The undersigned must confess, however, that the individualized-inquiries regarding damages – at trial – appear daunting.[2]

To be sure, the Court continues to believe that common issues of fact and law warrant collective-action treatment, especially as relates to liability. But, how damages determinations may be made, without degeneration into a series of mini-trials, is harder to envision. On top of that, there are a number of individual Plaintiffs whose cases – until otherwise ordered – remain consolidated herewith.

---

possibility that, because Defendant (purportedly) continued to *de facto* apply the day-rate, the workers' effective hourly wage-rates *never were, in fact, contemporaneously established*. *Cf.* Def.'s Br. (Doc. 69) at 4 (written announcement, stating that, at the time of the initial DOL-audit, "we were told to adopt a regular rate of pay for all employees and to pay a minimum of 1.5 times [the] regular rate for any hours over 40 in a work week") (emphasis added). While this would not-necessarily inure to the benefit of Defendant in every instance, any failure on Defendant's part certainly cannot be held to the legal-detriment of Plaintiffs, on summary judgment or at trial.

[2] Presumably, an effective hourly-rate for each individual Plaintiff would need to be determined; then, the fact-finder would need to discern, based on the number of overtime-hours worked, how much more the individual-Plaintiff should have been paid. The calculations further would be complicated by Defendant's adoption of its standby-time policy, purportedly to bring workers' pay in-line with their former day-rates. If such calculations appear challenging to the Court (and they do), one can only imagine what it might be like for a jury. That something is difficult does not mean that it cannot, or should not, be done. The Court raises these concerns only to say – counsel and the parties should know what they are getting into, and proceed with eyes-open.

The Court certainly does not mean to invite relitigation of this case's status as a collective action. At the Conference establishing summary-judgment procedures, Defendant, through its counsel, expressly stated that it would not seek decertification.[3] Even had it not, allowing an eleventh-hour motion would be inconsistent with the intentions manifested by the parties and the Court. *Cf. generally* Alig v. Quicken Loans Inc., 2016 WL 10490288, *8 (N.D. W. Va. Aug. 25, 2016) ("defendants should not be permitted to wait and see how the [c]ourt will rule on . . . summary judgment . . ., and then, after the [c]ourt rules against [them], belatedly seek to decertify the class on the ground that the [c]ourt should never have followed that procedure in the first place") (citation to quoted and other sources omitted). Finally, should concerns regarding individualized-inquiry so warrant, there remains the prospect of bifurcation. *See* Maynor v. Dow Chemical Co., 671 F. Supp.2d 902, 934 (S.D. Tex. 2009) (collecting authority endorsing bifurcation of liability and damages in FLSA collective actions).

These things notwithstanding, the parties and their counsel should seriously-consider the wisdom of embarking in protracted jury-proceedings. Given the relatively-small number of claimants, and the limited time-frame of putative liability,[4] it appears that the parties' time, energy and resources would be better-spent in furtherance of alternative-resolution.

Although the Court typically – at this stage − would set trial-related deadlines and schedule trial, it instead **ORDERS** as follows. Counsel for all parties in this consolidated-litigation have two options: they either may conduct another round of ADR, before a mutually agreed-upon neutral (preferably one with special knowledge and experience regarding FLSA

---

[3] The Conference was held on February 1, 2018. *See* Conf. Minutes (Doc. 65).

[4] *See* Collective Pls.' Opp'n Br. (Doc. 76) at 13 ("[t]he practices at issue . . . appear to have abated" in "August or September of 2015"); Individ. Pls.' Opp'n Br. (Doc. 79) at 13 (aggrieved-incidents "occurred in 2013 through at least 2015").

4

collective-actions); or they may appear before the undersigned for Court-facilitated mediation. After meeting and conferring, counsel shall, by **January 7, 2019**, file either a standard ADR Stipulation (available on the Court's website); a stipulation indicating their preference for Court-facilitated mediation; or, if they cannot reach agreement, they shall file a joint-notice stating each party's position. In the absence of unanimous agreement, the Court will make the final decision.

Consistent with the foregoing, Defendant's Motion for Summary Judgment (**Doc. 67**) is **DENIED**.

IT IS SO ORDERED.


December 17, 2018                                s\Cathy Bissoon
                                                 Cathy Bissoon
                                                 United States District Judge

cc (via ECF email notification):

All counsel of record